**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| TREEMO, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>FLIPBOARD, INC., a Delaware corporation,<br><br>Defendant. | NO. C13-1218-JPD<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |
| FLIPBOARD, INC., a Delaware corporation,<br><br>Counter-Claimant,<br><br>v.<br><br>TREEMO, INC., a Delaware corporation,<br><br>Counter-Defendant. | |

I.   INTRODUCTION AND SUMMARY CONCLUSION

On July 11, 2013, plaintiff and counter-defendant Treemo, Inc. ("Treemo") filed a declaratory judgment against defendant and counter-claimant Flipboard, Inc. ("Flipboard") for a declaration of non-infringement of trademark rights under the Declaratory Judgments Act, 28

ORDER - 1

U.S.C §§ 2201 and 2202, and the Lanham Act, 15 U.S.C. § 1124(a) and (c). Dkt. 1. On July 26, 2013, Flipboard filed an answer and counterclaims alleging statutory and common law infringement of trademark rights and false designation of origin claims, under 15 U.S.C. §§ 1114 and 1125(a). Dkt. 6.

On June 19, 2014, the parties filed cross motions for summary judgment. Dkts. 51, 61. Treemo seeks an order granting summary judgment that its "FLOWBOARD" mark does not infringe its "FLIPBOARD" mark. Dkt. 51 at 4. Conversely, Flipboard asks this Court to determine, as a matter of law, that Treemo's FLOWBOARD mark infringes its mark. Dkt. 61 at 6. Having considered the briefs and supporting materials filed by the parties, the parties' oral arguments on August 1, 2014, and the balance of the record, the Court DENIES both motions for summary judgment (Dkts. 51 and 61).

## II.    BACKGROUND

### A.    Flipboard

Founded in 2010, Flipboard is a technology company based in Palo Alto, California. Dkt. 61 at 8. In July 2010, Flipboard launched its primary product, which is a software application for smartphones and tablet computers called "Flipboard" (hereinafter the "Flipboard App"). Id. The Flipboard App allows users to create interactive publications by combining elements of online content in order to tell stories, act as an online photo album, and display social media content. Id. at 9. Depending on the user's preferences, the Flipboard App allows users to make personal publications that can include content from various Internet sources. Id. Users can then publish and share their content for other users to view. Id. The Flipboard App is available for free and can be downloaded from online channels such as Apple's App Store for iPhones and iPads, and the Google's Play Store for Android devices. Id.

Associated with Flipboard's App is a FLIPBOARD mark and its "F" logo, which have been used in commerce since 2010. *Id*. at 10; Dkt. 56. Flipboard applied for registration of its FLIPBOARD mark with the U.S. Patent and Trademark Office ("USPTO") in February 2010, and for its F logo mark in December 2010. Dkt. 61 at 10. The USPTO granted registration of the FLIPBOARD mark and F logo (collectively "the FLIPBOARD Marks"), separately, in July 2012 and again in August 2013. Dkt. 61 at 10-11.

The FLIPBOARD mark is used throughout the Flipboard App, in the URL of Flipboard's website, the account name for Flipboard's official Facebook account, and as the "handle" for Flipboard's official Twitter account. Dkt. 61 at 10. Similarly, its F logo is displayed throughout Flipboard's website, the Flipboard App, and in Flipboard's marketing material. Id.

     B.    <u>Treemo</u>

Founded in 2005, Treemo is a technology company based in Seattle, Washington. Dkt. 51 at 5; Dkt. 61 at 12. Since its founding, Treemo has been in the business of developing and marketing mobile applications. *Id*.

In 2011, Treemo was producing and distributing a software product for mobile devices called "AppaFolio." Dkt. 51 at 5. The AppaFolio product was a platform for a user to bring together into a "folio" the user's personally-generated multimedia content, such as graphics, images, or other user-created content. *Id*. In early 2012, Treemo began researching and developing user interface prototypes for a tablet-based authoring tool that would allow anyone to author interactive presentations from their tablet, specifically the iPad tablet. *Id*. at 6. The goal was to create a tool that would allow users to author presentations that could be explored interactively. *Id*. According to Treemo, "the new Treemo product allowed the user to build a storyboard-style presentation and then add interactive links to enable the viewer to arbitrarily follow various paths in the presentation, the way one would in a flowchart." *Id*. Thus, the

ORDER - 3

fundamental interaction used to navigate Treemo's application is the ability to scroll or "flow" from screen to screen. *Id*.

Starting around May 2012, Treemo decided to rebrand its AppaFolio product. *Id*. Treemo began considering the name "Flowboard" for its product. Dkt. 61 at 13. According to Treemo, it conducted some research, including doing a search of domain names, trademarks, and other uses of the words "flow" and "board," in order to determine whether the term "Flowboard" was available to use. At least as early as this time, Treemo discovered the FLIPBOARD Marks. *Id*. In July 2012, Treemo Director Geoff Entress noted to Treemo Founder Brent Brookler that the Flowboard name being considered was similar to Flipboard's. *Id*. Despite the recognition of the FLIPBOARD Marks, Treemo decided to proceed with the Flowboard name for its product. Dkt. 51 at 8. On August 9, 2012, Treemo filed an application for registration of the "FLOWBOARD" mark with the USPTO and was issued the mark. Dkt. 53-5. In addition, to the FLOWBOARD mark, Treemo also adopted its own version of an F logo (collectively "the FLOWBOARD Marks"). See Dkt. 51 at 8.

On or about April 18, 2013, Treemo launched its rebranded application (hereinafter "the Flowboard App"), and began doing business as Flowboard. Dkt. 61 at 13. Like the Flipboard App, the Flowboard App is available for the iPad, and is available for download at the Apple App Store. *Id*. at 14. Treemo uses its FLOWBOARD Marks in essentially the same way as Flipboard uses its marks. *Id*. Treemo uses the FLOWBOARD mark as the URL of its official website, in the account name for Flowboard's official Facebook account, and as the "handle" for the Flowboard's official Twitter account. *Id*. The FLOWBOARD Marks also appear throughout the Flowboard App itself, in all of Treemo's marketing materials concerning the Flowboard App, throughout the Flowboard website, and next to the icon for the Flowboard App on most mobile devices. *Id*. at 14-15.

C.  Dispute

Shortly after Treemo launched the Flowboard App, Flipboard learned of Treemo's product and, through its counsel, contacted Treemo via a letter dated April 22, 2013, requesting that Treemo refrain from using the FLOWBOARD Marks, so as to not cause any confusion in the marketplace between the two company's respective products.  Dkt. 61 at 17.  Treemo refused, and this litigation ensued.

### III.  LEGAL ISSUES

1.  Should either party's motion for summary judgment be granted?
2.  If not, are the parties entitled to a jury trial?

### IV.  DISCUSSION

A.  Legal Standard for Summary Judgment

A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  That genuine issue of fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id*.

B.  Summary Judgment is Inappropriate

To prevail on a trademark claim under the Lanham Act, a plaintiff must prove (1) it has a protectable ownership interest in a mark, and (2) the defendant's use of the mark is likely to cause consumer confusion.  *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202-03 (9th Cir. 2012).  In a trademark infringement action, likelihood of confusion is the touchstone. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  The Ninth Circuit has identified eight factors (commonly referred to as the "*Sleekcraft* factors") as relevant to the likelihood of confusion analysis.  These include: (1) the strength of the allegedly infringed

ORDER - 5

mark; (2) the similarity of the parties' goods; (3) the similarity of the parties' marks; (4) the extent to which there is evidence of actual confusion; (5) the marketing channels used by the parties; (6) the degree of care likely to be exercised by the purchasers of the parties' products; (7) the alleged infringer's intent in selecting its marks; and (8) the likelihood that the alleged infringer will expand its product lines. *See Sleekcraft*, 599 F.2d at 348-49.

The Ninth Circuit has consistently held that the application of the *Sleekcraft* factors in determining the likelihood of confusion is to be "pliant" and has warned against "excessive rigidity" in applying the factors. *See e.g., Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008). It has also stated that some factors are much more important than others, and the relative importance of each individual factor will be case-specific. *Brookfield Commc'n, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). Although some factors such as the similarity of the marks and whether the two companies are direct competitors will always be important, the Ninth Circuit has stated that it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors. *Id*. (citing *Dreamwerks Prod. Group v. SKG Studio*, 142 F.3d 1127, 1130-32 (9th Cir. 1998)). Thus, there is no requirement that the plaintiff establish that all *Sleekcraft* factors weigh in favor of summary judgment, or even that a majority do. Nor is any one factor dispositive. Rather, courts have extensive discretion in determining how much weight to accord each factor based on the circumstances of the case. *See e.g., Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085 (9th Cir. 2013); *One Industries, LLC v. Jim O'Neal Distributing, Inc.*, 578 F.3d 1154 (9th Cir. 2009); *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1078 (9th Cir. 2006). Where the court determines that the *Sleekcraft* factors, considered in their totality, indicate a likelihood of consumer confusion, summary judgment is appropriate. *See e.g., Au-Tomotive Gold*, 457 F.3d at 1078. The Ninth Circuit has, however, repeatedly held that summary judgment is generally disfavored in trademark litigation, because the nature of

ORDER - 6

trademark case analysis is fact intensive. *Fortune Dynamic, Inc. v. Victoria's Secret Store Brand Mgmt, Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010).

Here, genuine issues of material fact exist with respect to *Sleekcraft* factors (2), (6), and (7) (as will be discussed below), which need to be further developed at trial. As a result, the Court finds that granting summary judgment is inappropriate.

### 1. *Flipboard Owns the FLIPBOARD Marks*

As a preliminary matter, there is no dispute that Flipboard owns federal trademark registrations for the marks. Dkt. 61 at 10-11, 19. It is also undisputed that Flipboard is the senior user, as it has been marketing its software using the FLIPBOARD Marks since July 2010, almost three years prior to the launch of the Flowboard App. Dkt. 61 at 13, 19. Thus, Flipboard has established that it has a protectable ownership interest in the FLIPBOARD Marks.

### 2. *Issues of Material Fact Exist as to Similarity of the Products and Degree of Care*

The "use of similar marks to offer similar products . . . weighs heavily in favor of a likelihood of confusion." *Brookfield*, 174 F.3d at 1063-64. This factor does not require the products to be completely identical. Rather, "[r]elated goods are those 'products which could be reasonably thought by the buying public to come from the same source if sold under the same mark.'" *Sleekcraft*, 599 F.2d at 348 n.10; *see also Brookfield*, 174 F.3d at 1056; *Golden Door, Inc. v. Odisho*, 646 F.2d 347, 350 (9th Cir. 1980).

Treemo argues that its Flowboard App is not similar to Flipboard's App. Dkt. 51 at 15-17. First, Treemo argues that the parties' products and services are unrelated and function differently, because Treemo's Flowboard App functions in the area of "touch publishing" and "content creation," whereas Flipboard's App is a "news aggregator" and does not allow for the creation of new content. Dkt. 51 at 16. Second, Treemo argues that the parties target different customers in that Treemo's Flowboard App is "targeted to creative individuals who, generally,

are authoring presentations or other business-minded content," whereas Flipboard's App is "targeted at individuals who enjoy reading the news." *Id*.

Flipboard takes a broader view of the parties' products.  Specifically, Flipboard argues that both products' "primary function is to allow users to create and share personal, customized publications that combine text and images drawn from a variety of sources." Dkt. 61 at 26.  Moreover, Flipboard argues that "both can be used to tell stories, initiate dialog about new ideas, and share photos in an aesthetically pleasing format."  At oral argument, Flipboard's counsel characterized both products as being part of the personalized publication app market.

Here, genuine issues of material fact exist as to whether the products compete in the same market and for the same consumer base.  While evidence exists that both products allow users to create and share personal, customized publications, there is some evidence that the Flowboard App differs in that it allows users to create content rather than merely aggregate content.  Treemo has attempted to highlight this difference and likens the Flowboard App to something akin to a "Power Point presentation app" for mobile devices, whereas, according to Treemo, the Flipboard App merely allows users to passively aggregate data. *See e.g.*, Dkt. 51 at 15-16.  This may or may not be a significant difference in functionality by the two products that could differentiate them in the marketplace and from the same market space.  Moreover, at least some evidence exists that indicates the products are categorized differently in the marketplace.  *Id*.; Dkt. 73 at 5; Dkt. 79 at 10.

In addition, although both products are available to download for free, it is unclear if the alleged product differentiation asserted by Treemo would affect the degree of care exercised by consumers when downloading the products.  These are issues that should be resolved at trial.

          3.     *Issues of Material Fact Exist as to Treemo's Intent*

Flipboard argues that Treemo acted in bad faith and attempted to trade on Flipboard's established goodwill when it chose the FLOWBOARD Marks.  Dkt. 61 at 21.  Flipboard points

ORDER - 8

to several pieces of evidence to support its position. First, Flipboard points to an email from Mr. Entress to Mr. Brookler, in which Mr. Entress, after being asked about the Flowboard name said "I like it. Is the popular news app Flipboard? I guess that is a good thing." Dkt. 58-9 at 2; Dkt. 61 at 21. Second, Flipboard points to the fact that Treemo assigned one of its lead designers to review Flipboard's "online presence/social media strategy." Dkt. 58-8 at 2; Dkt. 61 at 21. Third, Flipboard points to statements made by Treemo likening the Flipboard App to the Flowboard App to the press. Dkt. 61 at 21.

Treemo argues that it acted in good faith when it adopted FLOWBOARD, and while it did undertake a review of Flipboard's mark and business, it did so in an effort to avoid any trademark dispute. Dkt. 51 at 20. Moreover, Treemo argues that it engaged in a trademark search at the USPTO and was told by the prosecuting examiner that there was no likelihood of confusion, thus validating its good faith belief that FLOWBOARD could be used. Dkt. 67 at 9-10.

Here, genuine issues of material fact exist as to Treemo's intent in adopting its marks. While the quote by Treemo's executive raises substantial questions regarding Treemo's alleged good faith in its adoption of FLOWBOARD, this is an issue best left to the trier of fact after hearing from Mr. Entress at trial.

### C. Flipboard's Damages Claims Are Moot and a Jury Trial is No Longer Proper

Flipboard has agreed to waive its claims for monetary damages. Dkt. 66 at 14; Dkt. 72 at 15. As a result, issues pertaining to Flipboard's damages are moot and this Court does not need to address any arguments regarding the same on summary judgment.

However, this raises an issue between the parties as to whether a right to a trial by jury still exists. *See* Dkts. 78, 79. Initially both parties demanded a trial by jury and properly preserved that right. Now, however, because Flipboard has withdrawn its damages claims,

leaving only equitable relief, and because Treemo seeks only declaratory relief, the question is whether the parties are still entitled to a jury trial. The answer is no.

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. Amend. VII. "The phrase 'Suits at common law' refers to 'suits in which legal rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered.'" *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564-65 (1990) (citations omitted). Federal Rule of Civil Procedure 38 provides that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." Fed. R. Civ. P. 38(a). Rule 38 further provides that a "[a] demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties." Fed. R. Civ. P. 38(d). Treemo latches onto Rule 38 and argues that because it has not, and will not, consent to a withdrawal of its jury demand, the case must still be tried to a jury. Treemo is wrong.

While the Ninth Circuit has never addressed this issue, other courts have interpreted Rule 38 to apply only in situations *where a right to a jury trial already exists*. *See e.g.*, *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 968 (7th Cir. 2004) ("Rule 38, as is made clear by the caption, is concerned with jury trials of right"); *Starbucks Corp. v. Lundberg*, No. 02-948-HA, 2005 WL 6036699, at *4 (D. Or May 25, 2005); Q*uinn Const., Inc. v. Skanska USA Bldg., Inc.*, No. 07-406, 2010 WL 4909587, at *4 (E.D. Pa Nov. 30, 2010) ("Rule 39 clarifies that Rule 38 is not a source of independent rights, and reflects the possibility that a party may have no pre-existing right to a jury trial."); *Alexander v. Chattahoochee Valley Cmty. Coll.*, 303 F. Supp. 2d 1289, 1290-91 (M.D. Ala. 2004) ("[U]nder Rule 39(a)(2), if a court finds that 'a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States,' the court may order that the trial not be by

ORDER - 10

jury."); *Manrique v. Fagan*, No. 08-60501-CIV, 2009 WL 700999, at *8 (S.D. Fla. Mar. 16, 2009) ("Admittedly, Rule 38(d) does not require consent if no right to a jury exists.").

Thus, in a situation such as this, where a right to a jury trial no longer exists, consent to withdraw the jury demand is no longer required. While Treemo argues that this Court should at least try this case to an advisory jury, that decision is at the discretion of the Court. *See* Fed. R. Civ. P. 39(c). The Court sees no need to do so. As a result, this case will be tried as a bench trial.

## V.   CONCLUSION

For the foregoing reasons, the Court ORDERS:

(1) Flipboard's motion for summary judgment (Dkt. 61) is DENIED.

(2) Treemo's motion for summary judgment (Dkt. 51) is DENIED.

(3) The trial shall proceed in this matter as scheduled (*see* Dkt. 18), but will be tried to the undersigned as a bench trial.

DATED this 15th day of August, 2014.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

ORDER - 11